UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**REINALDO O. PAGAN,**

      **Plaintiff,**

v.                                   **Case No: 6:22-cv-2201-RBD-EJK**

**OSCEOLA COUNTY COUNCIL
ON AGING, INC.,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

This cause comes before the Court on the parties' Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice (the "Motion") (Doc. 33). Upon consideration, I respectfully recommend that the Motion be granted.

**I.   BACKGROUND**

Plaintiff, Reinaldo O. Pagan, filed this single-count unpaid overtime wage case pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–219, against Defendant, Osceola County Council on Aging, Inc., on November 28, 2022.[1] (Doc. 1.) Plaintiff alleges he was employed by Defendant as a handyman to do construction and maintenance. (Doc. 1 ¶ 10.) Plaintiff held this position for 114 weeks, from April 23, 2020, to July 4, 2022. (*Id.* ¶ 9.) Plaintiff alleges he routinely worked in excess of 40 hours per week, for which he was not paid. (*Id.* ¶¶ 13, 14.)

---

[1] Plaintiff included allegations related to a collective action, but a review of the docket indicates no opt-in plaintiffs have joined. (*See* Doc. 1 ¶¶ 21–23.)

Plaintiff and Defendant have now negotiated a compromise and settlement of Plaintiff's FLSA wage claim, and on June 8, 2023, filed the instant Motion for settlement approval pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 33.) The parties have also indicated that they have not entered into any other separate agreement that is in any way related to this action or their settlement. (Doc. 35.)

## II.   STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was

designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[2]

## III. DISCUSSION

### A. Settlement Sum

The Settlement Agreement (the "Agreement") (Doc. 33 at 12–15) indicates that Defendant has agreed to pay Plaintiff $4,000 in unpaid overtime wages and another $4,000 in liquidated damages, for a total of $8,000 in damages for work during the relevant time period. (*Id.* at 12.) Plaintiff initially contended he was entitled to $24,624

---

[2] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

in unpaid overtime compensation, plus an additional amount of liquidated damages. (*Id.* at 4.)

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid minimum wages or unpaid overtime compensation, plus an additional, equal amount, as liquidated damages. On review of the issues discussed by the parties in the Motion, I find the $4,000 that Plaintiff has agreed to accept in satisfaction of his claims, plus the additional, equal amount in liquidated damages, to be fair and reasonable, considering that all parties are represented by counsel, wish to avoid the risk and expense of further litigation, and Defendant actively defended against the lawsuit. Specifically, Defendant contended that Plaintiff did not perform compensable work such that he would be entitled to overtime compensation, a fact Plaintiff disputed. (Doc. 33 at 3–4.) In light of all of these factors, I recommend finding that the settlement amount to be paid to Plaintiff represents a fair resolution of a *bona fide* dispute between the parties, and that Plaintiff has not unfairly compromised his claim.

### B. Attorney's Fees

Plaintiff's attorney will receive a total of $7,000 in attorney's fees. (Doc. 33 at 12–13.) Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." The parties represent that Plaintiff's attorney's fees were negotiated separately from the damages amount received by Plaintiff and the settlement is otherwise reasonable on its face; therefore, further review is not required. (Doc. 33 at 4–5); *Bonetti v. Embarq*

*Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (If the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.").

## C. Release

The parties have agreed to the following release: "Release of Claims. Pagan, on his own behalf, Pagan's descendants, dependents, heirs, executors, administrators, assigns, and successors fully, finally and forever releases and discharges the Council from the Fair Labor Standards Act violations as alleged in his Complaint (Case No.: 6:22-CV-02201-RBD-EJK)." (Doc. 33 at 13.)

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

Judges in this District have found releases similar to the one presented here to pass judicial scrutiny because they do not require Plaintiffs to release unknown claims that are unrelated to their FLSA and wage claims. *Pond v. Red Lambda, Inc.*, No. 6:19-cv-1975-ORL-37EJK, 2020 WL 4808744, at *4 (M.D. Fla. Aug. 3, 2020) (recommending approval of release of "unpaid wage and hou[r] and/or related claims

arising solely out of the same facts or circumstances related to those in the above-captioned action"), *report and recommendation adopted*, No. 6:19-cv-1975-ORL-37EJK, 2020 WL 4785449 (M.D. Fla. Aug. 18, 2020); *Batchelor v. Gen. Mar. Corp.*, No. 6:15-cv-2082-Orl-41KRS, 2016 WL 4467136, at *1 (M.D. Fla. Aug. 24, 2016) (approving release where it was "limited to wage claims"); *Monahan v. Rehoboth Hosp., Inc.*, 6:15-cv-1159-Orl-40KRS, 2015 WL 9258244, at *2 (M.D. Fla. Dec. 18, 2015) ("The undersigned sides with those decisions holding that a release in an FLSA settlement is generally reasonable so long as it is narrowly-tailored to the wage claims asserted in the complaint."). Therefore, because the Release provision releases only Plaintiff's FLSA claims against Defendant, I recommend that the Court find that this Release passes judicial scrutiny. *See Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted).

## IV. RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the parties' Joint Motion for Approval of Settlement Agreement and Dismissal with Prejudice (Doc. 33);
2. **FIND** that the Settlement Agreement (Doc. 33 at 12–15) is a fair and reasonable resolution of Plaintiff's *bona fide* disputes under the FLSA and **DISMISS** the Complaint (Doc. 1) **WITH PREJUDICE**; and
3. **DIRECT** the Clerk of Court to close the file.

**NOTICE TO PARTIES**

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

**If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.**

Recommended in Orlando, Florida on July 18, 2023.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE